UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| KELLY A. MCLAUGHLIN, *et al.*, | CIVIL ACTION |
| --- | --- |
| Plaintiffs, | NO. 2:16-CV-58-KKC-CJS |
| V. | **OPINION AND ORDER** |
| FIFTH THIRD BANK, INC., | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for Summary Judgment (DE 55) by Defendant Fifth Third Bank, Inc. ("Fifth Third"). Plaintiffs McLaughlin and Raniero have responded, and the motion is ripe for review. For the following reasons, the Court **GRANTS** the motion (DE 55).

## I.  INTRODUCTION

Plaintiffs are both former employees of Fifth Third Bank at its Newport, Kentucky location. (DE 1). Kelly McLaughlin was an employee of Fifth Third for approximately one and a half years, and was last employed as a Personal Banker. Janet Raniero was an employee of Fifth Third for approximately thirty-two years, and was last employed as a Customer Service Representative. On February 17, 2015, both McLaughlin and Raniero were discharged from their employment with Fifth Third. *Id.*

Fifth Third alleges it fired McLaughlin and Raniero because they violated its dual control policy regarding entry to its cash vault. (DE 1 at 3). Opening the cash vault at the Covington location required the simultaneous use of two separate keys, and the required keys were

1

assigned to different level employees. (DE 55-1 at 4). Other than an exception for a designated vault teller that is not at issue in this case, Fifth Third contends that a written policy required its employees to follow a system of dual control. As part of the policy, it was mandated that no less than two employees enter the vault at a time, and both remain present while the cash vault was open to observe the transaction. *Id*. at 4-5. When the transaction was completed, both employees were required to sign the dual control vault log to record their participation in the transaction. *Id*. Fifth Third contends that, due to a cash outage and a missing ATM key at the Newport Branch, it initiated an investigation into violations of the policy in January 2015, including through review of surveillance video and employee interviews. *Id*. The investigation concluded with Fifth Third firing several employees and issuing performance counseling to several others. Relevant here, Fifth Third fired three females: Kelly McLaughlin, Janet Raniero, and Alana Dillon. (DE 56 at 5). Fifth Third retained and provided performance counseling to three males: Randall Dreyer, Blake Hoover, and Joseph Durrett. *Id*. Fifth Third claims that its investigation also led to the recommendation that employees Will Sekula and Caitlyn Beagle be fired, but that the two resigned prior to termination. (DE 51 at 41, Gehlauf).

On April 19, 2016, Plaintiffs filed a complaint against Fifth Third alleging sex discrimination under Title VII of the Civil Rights Act of 1964, and Raniero also brought a claim for age discrimination under the Age Discrimination in Employment Act. (DE 1). Neither McLaughlin nor Raniero deny having entered the vault alone during the time they were employed by Fifth Third. (DE 47 at 33-34, McLaughlin; DE 46 at 11-12, Raniero). Instead, they argue that violation of the policy was widespread, and that, while they were fired, similarly-situated male employees who also broke the policy were retained. (DE 56 at 4-9).

Fifth Third has moved for summary judgment, alleging that Plaintiffs cannot prove a prima facie case of discrimination, and also cannot show that Fifth Third's purported reason for firing the Plaintiffs was pretext. (DE 55-1). The Plaintiffs argue that they can show a prima facie case based on the differing treatment of similarly-situated male employees, and that there exists a genuine dispute of material facts regarding whether the firing was motivated by sex, rather than violation of the dual control policy. (DE 56 at 13-21). The Court reviews the arguments below.

## II. ANALYSIS

### A. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the pleadings...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted).

Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In the Court's consideration of the motion, "the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 255).

### B. Title VII Sex Discrimination Claim

To establish a Title VII employment discrimination claim, a party is required to either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Carter v. University of Toledo,* 349 F.3d 269, 272-73 (6th Cir. 2003) (quoting *Johnson v. Kroger Co.,* 319 F.3d 858, 864-65 (6th Cir. 2003)). When a party fails to put forth evidence of direct discrimination, the burden-shifting

framework of *McDonnell Douglas* applies. *Id.* at 273; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). In this case, the Plaintiffs have not alleged direct evidence of discrimination, and both parties argue under the burden shifting framework. The framework requires the plaintiff to first present a prima facie case of discrimination, which creates a rebuttable presumption that discrimination occurred, and shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *Carter*, 349 F.3d at 273. If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Id.* (quoting *Johnson,* 319 F.3d at 865-66).

1. *Prima Facie Case*

To establish a prima facie case of sex discrimination, McLaughlin and Raniero must show that: (1) they were members of a protected class; (2) they were subjected to an adverse employment action; (3) they were qualified; and (4) they were treated differently than similarly-situated male employees for the same or similar conduct. *See McClain v. NorthWest Cmty Corr. Ctr. Judicial Corr. Bd.,* 440 F.3d 320, 332 (6th Cir. 2006) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir. 1999)). In this case, the first three elements are not in dispute. Instead, Fifth Third argues that undisputed facts on the record show that Plaintiffs cannot prove that they were treated differently than similarly-situated male employees. (DE 55-1 at 12-15).

To demonstrate that a particular individual is a "similarly-situated" employee, "a plaintiff is simply required to prove that all of the *relevant* aspects of her employment situation were nearly identical to those of the male employees' employment situation." *Simpson v. Vanderbilt Univ.,* 689 F. App'x 450, 453 (6th Cir. 2017) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). The Sixth Circuit has noted three factors relevant to determining whether employees are similarly-situated: (1) whether each

4

employee dealt with the same supervisor; (2) were subject to the same standards; and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. VHS Detroit Receiving Hosp., Inc.,* 814 F.3d 769, 777 (6th Cir. 2016). Plaintiff's burden at the prima facie stage is "not onerous and poses a burden easily met." *Id.* at 776.

At the outset, the Court notes that William Sekula is not a similarly-situated male employee from which Plaintiffs were treated differently. In fact, Sekula was not even an employee at the time Plaintiffs were fired, as he had already resigned. (DE 47 at 20-21, McLaughlin). While Plaintiffs point out that Sekula was never told he was going to be fired, Plaintiffs also admit that the final "decision to fire these women was made on a conference call that occurred after Will [Sekula] resigned." (DE 56 at 11). Both McLaughlin and Raniero also admit that they do not know whether Sekula would have been terminated if he had not previously resigned. (DE 47 at 40-41, McLaughlin; DE 46 at 26, Raniero). The only indication on the record as to Fifth Third's handling of Sekula is from the depositions of Employee Relations Consultant Bonnie Gehlauf, and Regional Manager Jerry Evers—both of whom were connected to Fifth Third's investigation. Gehlauf indicated that there was proof that Sekula had violated the policy, admitted to violating the policy, and a recommendation to terminate him had been made. (DE 51 at 28, Gehlauf). Evers indicated that had Sekula not resigned prior to termination, he would have been terminated. (DE 52 at 16, Evers). Since Sekula was not even an employee at the time of the adverse employment decision, and there being no evidence that Sekula was or would have been treated differently, Sekula simply cannot be the basis of Plaintiffs' prima facie case.

The remaining thrust of Plaintiffs prima facie case rests on the view that Randall Dreyer, Blake Hoover, and Joseph Durrett were similarly-situated male employees that, rather than being fired, were retained and given performance counseling. As to Randall Dreyer, the

5

Plaintiffs have proffered evidence that he was a Customer Service Representative similar to Raniero (DE 56 at 2); was subject to the same dual-control policy as both Plaintiffs; that Fifth Third found video surveillance of Dreyer breaking the policy (DE 51 at 6, 29, Gehlauf); that Dreyer admitted to breaking the policy when interviewed as part of the Fifth Third investigation (DE 50 at 11, Dreyer); and that Dreyer was not fired. (DE 51 at 41, Gehlauf). The Court finds that Plaintiffs have carried their burden to force Fifth Third to proceed with its case, and the Court considers Fifth Third's explanation of its actions regarding Dreyer in the remaining two steps of the *McDonnell Douglas* framework below.

But in contrast to both the Plaintiffs and Dreyer, there was no video evidence that Durrett or Hoover violated the dual control policy, and the two did not admit to violating it. (DE 51 at 6, Gehlauf). The Court is faced with conflicting evidence. Plaintiffs contend that Durrett and Hoover violated the policy, making them similarly-situated employees who were treated differently (DE 47 at 21, McLaughlin; DE 46 at 17, Raniero); Durrett and Hoover claimed that they did not violate the policy nor had knowledge of others' violations (DE 48 at 10, Hoover; DE 49 at 13, Durrett); and Fifth Third contends that their investigation returned insufficient evidence to conclude that the two violated the policy. (DE 51 at 41, Gehlauf). This dispute is material, since Durrett and Hoover are not similarly-situated male employees that were treated differently than the Plaintiffs if they did not violate the policy in issue.

But the Court is not to make credibility determinations at the summary judgment stage, and the evidence is to be viewed in a light most favorable to the non-moving party. *See Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir. 2005). In such a light, Plaintiffs have proffered evidence that, while Durrett and Hoover may have acted in a supervisory capacity to the Plaintiffs, they were subject to the same dual control policy; the same investigation by Fifth Third; in deposition testimony, Plaintiffs claim that Durrett and Hoover violated that policy in the same way as others (DE 47 at 21, McLaughlin; DE 46 at 17, Raniero); and the

6

two males were retained by Fifth Third (DE 51 at 41, Gehlauf). Given that most of Fifth Third's arguments disputing this evidence relate to pretext, the Court considers them below and proceeds with the *McDonnell Douglas* framework.

   2. *Legitimate, Nondiscriminatory Reason For Challenged Employment Action*

At step two, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *Carter*, 349 F.3d at 273. Here, Fifth Third satisfies this burden by naming a nondiscriminatory reason for firing the Plaintiffs—namely, ample evidence to conclude the Plaintiffs violated the dual control policy without mitigating circumstances. (DE 55-1 at 15); (DE 51 at 29, Gehlauf) ("Those that were fired were those that had violated the policy, admitted to doing so, with the exception of Randall Dreyer because there was mitigating circumstances"). Violations of a general company policy may constitute a legitimate, non-discriminatory reason for termination under *McDonnell Douglas. See e.g., Graham v. Best Buy Stores, L.P.,* 298 Fed. Appx. 487, 494 (6th Cir. 2008).

   3. *Pretext*

Once the defendant produces a nondiscriminatory reason for its actions at step two, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Carter,* 349 F.3d at 273 (quoting *Johnson,* 319 F.3d at 865-66). At the pretext stage, "the factual inquiry proceeds to a new level of specificity." *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089 (1981). In the Sixth Circuit:

> [A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action. To carry her burden in opposing summary judgment, [plaintiff] must produce sufficient evidence from which a jury could reasonably reject [defendant's] explanation of why it fired her…When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.

7

*Chen v. Dow Chemical Co.,* 580 F.3d 394, 400-01 (6th Cir. 2009) (internal citations omitted). Thus, the pretext stage does not hinge on sorting out whether or not violations of the policy occurred, but rather, whether Fifth Third reasonably and honestly believed in its nondiscriminatory reason for treating the Plaintiffs differently than Dreyer, Durrett, and Hoover. And Plaintiffs have not "identif[ied] evidence from which a reasonable jury could conclude that [Fifth Third's] proffered reason is actually a pretext for unlawful discrimination." *Jackson,* 814 F.3d at 779. As such, summary judgment is warranted.

In this case, Fifth Third performed an investigation to determine which employees had violated its dual control policy. The investigation included review of surveillance footage for January 2015, from which Fifth Third was able to capture screenshots of dual control policy violations by Raniero, McLaughlin, Sekula, Dreyer, Beagle, and Dillon, but notably there was no video evidence of violations by Hoover or Durrett. (DE 51 at 6, Gehlauf). Fifth Third argues that it was given conflicting reports as to whether Hoover and Durrett violated the policy or knew of violations. *See* (DE 51 at 11, 42, Gehlauf); *see also* (DE 47 at 21, McLaughlin) (explaining that she did not tell Fifth Third that Hoover or Dreyer violated the policy, but did tell Fifth Third that Durrett violated); *see also* (DE 46 at 9, 18, Raniero) (explaining that she did not tell Fifth Third that Durrett or Hoover violated the policy). But it is undisputed that Fifth Third expanded its review of surveillance footage to include vault activity from December 2014 in response to accusations regarding the two employees. (DE 53 at 7, Forte). Review of the expanded footage failed to reveal any violations by Durrett or Hoover. *Id.*

Fifth Third also interviewed a number of employees related to the potential policy violations, including Raniero, McLaughlin, Sekula, Hoover, and Durrett. (DE 51 at 6, Gehlauf). The Plaintiffs do not dispute that during those interviews, Raniero, McLaughlin,

8

and Dreyer admitted to violating the policy. (DE 53 at 11, Forte). It is also undisputed that Durrett and Hoover did not admit to violating the policy. (DE 51 at 41, Gehlauf).

Thus, at the end of its investigation, Fifth Third had no video evidence that Hoover or Durrett violated the policy, no admittance by either employee, and Fifth Third determined that it lacked credible information upon which to fire the two. (DE 55-1 at 9-10). Instead, Fifth Third determined that Hoover and Durrett knew, or should have known of violations that were occurring, and required they go through performance counseling. (DE 55-1 at 11; DE 51 at 41, Gehlauf). In contrast, Fifth Third had video evidence of both Plaintiffs violating the dual control policy, and both Plaintiffs admitted to violations. The Court finds that Plaintiffs have not shown that Fifth Third's belief that there was sufficient evidence of policy violation to fire the Plaintiffs, but insufficient evidence to fire Hoover and Durrett, was not a reasonable and honest belief, or that it was only pretext for unlawful discrimination. And, on this record, no reasonable jury could find otherwise.

The Plaintiffs are correct to point out that Dreyer admitted to policy violations and was seen violating the policy on surveillance footage, but was retained by Fifth Third. Fifth Third argues that its investigation found that Dreyer had a mitigating factor: namely, that he only violated the dual control policy because he was bullied into it by someone he considered a superior. (DE 60 at 5-6). In response, Plaintiffs argue that Fifth Third's video evidence of Dreyer violating the cash policy "did not even involve this alleged bully employee." (DE 56 at 12). But the fact that Dreyer felt uncomfortable violating the policy and expressed that feeling to others is not disputed on the record, since McLaughlin admits to bringing it to the attention of Fifth Third during her interview. (DE 47 at 11, McLaughlin). Gehlauf explained that this information, including McLaughlin's description of Dreyer as a "by-the-book guy," led Fifth Third to look into the issue further, and "had a great impact on the investigation." (DE 51 at 34, Gehlauf). Ultimately, Gehlauf stated that the information from McLaughlin

9

was corroborated and led her to recommend that Dreyer be retained because of the "mitigating circumstances." *Id.* at 28-29. Further, Dreyer's deposition testimony revealed that he told Gehlauf about incidents with management during his interview—incidents which he believed led to his being bullied at the branch and his violation of the dual control policy. (DE 50 at 11-13). Dreyer also explained to Gehlauf that McLaughlin had once asked him to enter the cash vault alone, but never asked again after Dreyer refused. *Id.* Neither McLaughlin nor Raniero allege having objected to the dual control policy violations similar to Dreyer, or told Fifth Third that they were the subject of incidents similar to Dreyer.

Circumstances that distinguish the conduct of employees, or their employer's treatment of them for it, are relevant in cases alleging differential disciplinary action. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). Given that McLaughlin herself admits to bringing Dreyer's circumstances to the attention of the company, not to mention the further support it finds throughout the record, Plaintiffs have not shown that Dreyer's mitigating circumstances had no basis in fact, did not actually motivate Fifth Third's action, or were insufficient motivation. *Chen,* 580 F.3d at 400-01. In other words, the Court does not find evidence upon which a reasonable jury could conclude that Fifth Third's belief in Dreyer's mitigating circumstances was not reasonable and honest, or was simply pretext for unlawful discrimination.

Ultimately, Fifth Third relied on particularized facts discovered during its investigation of the Newport branch in making its employment decisions. Other than the mitigating circumstances related to Dreyer discussed above, Fifth Third fired all employees who were seen violating the policy on surveillance video, and admitted to violating the policy. The Plaintiffs met that criteria. And they have not produced sufficient evidence upon which a reasonable jury could reject this reason for their firing, or otherwise find that it is simply

pretext for unlawful discrimination. *Chen,* 580 F.3d at 400-01. As such, summary judgment is warranted.

### C. ADEA Age Discrimination Claim

The *McDonnell Douglas* framework applied above to Plaintiffs' claims under Title VII, also applies to claims under the ADEA. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992). Since Plaintiff's failed to show that Fifth Third's nondiscriminatory reason for its employment action was a pretext, Raniero's claim under the ADEA also fails for the same reasons.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment (DE 55) by Defendant Fifth Third. Judgment consistent with this Opinion and Order will be entered contemporaneously.

It is so **ORDERED**.

Dated June 7, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY